## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYRONE WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**                                             **NO.  05-0710**

**BURL CAIN, WARDEN**                                  **SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

I.      **Factual and Background**

The petitioner, Tyrone Williams ("Williams"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Williams was charged in Orleans Parish with possession with intent to distribute cocaine and attempted possession of a weapon by a felon.[3]

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]The record provided by the State does not contain a copy of the Bill of Information.  The charges are clear from the pleadings in the record.  *State v. Williams*, 788 So.2d 515 (La. App. 4th Cir. 2001); St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, 5/9/01; St. Rec. Vol. 4 of 4, Minute Entry, 7/20/99.

The record reflects that, on November 18, 1997, Detective Adam R. Henry and Officer Michael Harrison, armed with a search warrant, set up a surveillance at 1554 Lafreniere Street in New Orleans.[4]  The officers observed a blue van, which parked in front of the residence.  A male passenger jumped out, ran up to the porch, and knocked on the door.  Williams exited and briefly conversed with the male before returning inside.  Williams reappeared and handed the male something, and the male reentered the van and drove away.  Detective Henry observed a second transaction during which the suspected buyer and Williams exchanged money before Williams went back inside and came out to hand something to the buyer.  The third transaction involved a female who knocked on the door.  Subsequently, a male entered the residence, staying for only one to two minutes before leaving.  One of these individuals arrived at the residence in a red car.

The officers knocked on the door of the residence and announced their presence.  After hearing activity inside, the officers used a ram to force their way in.  Upon entry, Sergeant Patrick Brown saw Williams running toward the rear of the residence and restrained him.  Brown and several other officers, executed the search warrant and the officers seized a test tube in a brown paper bag, a box of sandwich bags, four bags of powdered cocaine, two bags of crack cocaine, $236 in cash, two beepers, and a .357 magnum revolver.  Also recovered were two pieces of documentation with the defendant's name and the address of 1554 Lafreniere Street as proof of residence.

Charlene Williams, the younger sister, was present when the police arrested her brother. Charlene Williams testified at trial that the police removed a bag from a book shelf in the residence.

---

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Williams*, 788 So.2d at 520-22; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, pp. 1-4, 5/9/01.

The bag was one that she had placed in the residence for an ex-boyfriend who, after work, usually gave her a bag containing his "work clothes and things."  She did not see the police confiscate any drugs from the house, but claimed the drugs were seized from the brown paper bag she had taken into the residence for her boyfriend.

Earline Reynolds, Williams's other sister, also was present at the residence on November 18, 1997, when Charlene Williams's boyfriend handed Charlene a bag, and saw her put the bag on an entertainment center in the living room.  Reynolds saw no drugs in the residence, nor did she observe any drug transactions there that day.

On November 18, 1998, Williams was tried before a jury for possession with intent to distribute cocaine, and he was found guilty as charged.[5]  At a hearing held on April 26, 1999, the Trial Court determined Williams to be a third offender and sentenced him to serve mandatory life imprisonment without benefit of parole, probation, or suspension of sentence.[6]

On July 20, 1999, Williams entered a plea of guilty to the attempted felon in possession charge pursuant to *State v. Crosby*, 338 So.2d 500 (La. 1996), and *North Carolina v. Alford*, 400 U.S. 25 (1970).[7]  The Trial Court sentenced him to serve four years without benefit of parole, probation, or suspension of sentence, to run concurrent with the life sentence on the drug charge.

---

[5]*Id.*; St. Rec. Vol. 1 of 4, Trial Transcript, p. 88, 11/18/98.

[6]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Transcript, Volume 1, 4/26/99; Multiple Bill Hearing Transcript, Volume 2, 4/26/99.

[7]St. Rec. Vol. 4 of 4, Minute Entry, 7/20/99; *State v. Williams*, 788 So.2d at 520; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, p. 1, 5/9/01.

Williams appealed both convictions, wherein his appointed counsel raised three grounds for relief and Williams raised three grounds for relief:[8] (1) by counsel and Williams, the Trial Court erred in denying the motion to suppress and the motion to quash the evidence seized under the search warrant because the warrant was based on stale information pertaining to one sale observed by a confidential informant and otherwise incomplete or inconsistent information; (2) by counsel, the Trial Court erred in denying the motion to recuse the district attorney and two judges; (3) by counsel and Williams, the Trial Court erred in denying the motion to quash the multiple bill, in finding him to be a third offender, and by imposing an excessive sentence; and (4) by Williams, the Trial Court erred by admitting other crimes evidence.

On March 11, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed Williams's conviction and sentence.[9] The Court held that claims one and three were without merit. The Court also resolved that, as to claim two, the motion to recuse was untimely filed under La. Code Crim. P. art. 674 as applied to the drug charge and was baseless by the time the attempted felon in possession charge was heard. The Court also resolved that Williams waived the fourth claim because no contemporaneous objection pursuant to La. Code Crim. P. art 841 was made to the alleged other crimes evidence at trial.

Williams's subsequent writ application to the Louisiana Supreme Court was denied without reasons on May 10, 2002.[10] His conviction became final 90 days later, August 8, 2002, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510,

---

[8] *State v. Williams*, 788 So.2d at 520; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, 5/9/01.

[9] *Id.*

[10] *State v. Williams*, 815 So.2d 832 (La. 2002); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2001-KO-1813, 5/10/02.

513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    Procedural Background

On January 21, 2003, Williams's signed a Uniform Application for Post Conviction Relief raising eight grounds for relief:[11] (1) he was prejudiced by the judicial basis evidenced by the trial judge's prior prosecutorial experience; (2) the arresting officers did not knock and announce before forcibly entering; (3) trial counsel was ineffective because he was not prepared for the motion to suppress hearing, failed to move to suppress trial evidence, failed to introduce evidence to counter the officers' testimony, had a medical condition which affected his ability to take notes at trial, failed to object to a letter being introduced to jury with his prison address on it, failed to move for new trial based on his medical condition, failed to inform him of the potential for judicial bias, failed to properly pursue discovery, failed to challenge multiple offender evidence, and failed to adequately challenge sentencing procedures during prior convictions; (4) the arresting officers exercised selective law enforcement by failing to arrest Charlene Williams; (5) appellate counsel was ineffective for failure to raise the admission of other crimes evidence on appeal; (6) the prosecutor deliberately displayed the letter as prejudicial evidence to the jury prior to deliberations; (7) the Trial Court admitted improper documents as evidence at the multiple bill hearing; and (8) he was denied proper appellate review because of an incomplete transcript of the arguments on the motion to quash the search warrant.

---

[11] St. Rec. Vol. 3 of 4, Uniform Application for Post Conviction Relief, unfiled copy, signed 1/21/03.

On August 13, 2003, the Trial Court denied Williams's request for the judge to recuse herself from the case.[12]  That same day, the Court denied the application for post conviction relief.[13]  The Court held that the first two claims had been addressed on direct appeal and were not subject to further review pursuant to La. Code Crim. P. art. 930.4.[14]  The Court also barred review of the third claim under La. Code Crim. P. art. 930.4, finding that it could have been raised on direct appeal. The Court found that the fourth claim was without merit because the officers observed him committing a crime.  The Court found, without stated reasons, that Williams failed to carry his burden of proof that relief should be granted on the fifth and sixth claims.  The Court also resolved that the seventh claim was barred from review on post conviction pursuant to *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[15]  As to the eighth claim, the Court determined that it was not supported by the record.

The Louisiana Fourth Circuit denied Williams's subsequent writ application, which addressed both of the Trial Court's orders, finding no error in the Trial Court's rulings.[16]  Williams's thereafter filed two writ applications with the Louisiana Supreme Court, addressing both the recusal

---

[12]St. Rec. Vol. 3 of 4, Trial Court Judgment (recusal), 8/13/03.

[13]St. Rec. Vol. 3 of 4, Trial Court Judgment, 8/13/03.

[14]In relevant part, La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it "(A) raises claims fully litigated on appeal . . .  or ; (C) raises a claim which should have been raised on appeal . . ."

[15]In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[16]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2003-K-1570, 9/3/03; 4th Cir. Order, 2003-K-1570, 11/21/03.

issue and the post conviction claims in each.[17]  The Louisiana Supreme Court denied without reasons both applications by separate orders issued on December 17, 2004.[18]

## III.   **Federal Petition**

On May 25, 2005, Williams filed a petition for federal habeas corpus relief raising fourteen grounds for relief:[19]

(1)     The state courts erred in denying the motion to suppress.

(2)     The state courts erred in denying the *pro se* motions to recuse the judge and district attorney's office.

(3)     The state courts erred in denying the motion to quash the multiple bill and in sentencing him to an excessive sentence.

(4)     The Trial Court allowed introduction of other crimes evidence.

(5)     The Trial Court failed to suppress conflicting evidence allegedly seized under the search warrants.

(6)     Insufficient evidence to find him to be a multiple offender.

(7)     He was denied due process because of judicial bias.

(8)     The officers failed to knock and announce before forcibly entering the place of arrest.

(9)     Constructive denial of effective assistance of counsel during trial.

(10)    He was denied due process because the police officers did not arrest Charlene Williams at the same time.

(11)    Constructive denial of effective appellate counsel where the appointed attorney failed to raise significant issues on appeal.

(12)    The prosecution deliberately showed prejudicial information to the jury before deliberations.

(13)    The Trial Court admitted improper evidence to enhance the sentence.

(14)    He was denied complete judicial review based on a complete transcript of the hearing on the motion to quash the search warrants.

---

[17]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 04-KH-0048, 1/8/04 (postmarked 12/18/03); Supplementary La. S. Ct. Writ Application, 04-KH-48, 5/26/04 (postmarked 4/25/06); La. S. Ct. Writ Application, 04-KH-0123, 1/13/04 (postmarked 12/18/03); Supplementary La. S. Ct. Writ Application, 04-KH-123, 5/26/04 (postmarked 4/28/04).

[18]*State ex rel. Williams v. State*, 888 So.2d 857 (La. 2004); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-0048, 12/17/04; *State ex rel. Williams v. State*, 888 So.2d 861 (La. 2004); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-0123, 12/17/04.

[19]Rec. Doc. No. 3.

The State filed a terse and incomplete response in opposition to Williams's petition alleging that some of Williams's claims are procedurally barred from review, are not exhausted, and/or are without merit.[20]  Williams filed a reply to the State's opposition arguing that he has exhausted his claims and that his claims have merit.[21]  Williams also points out that the State cited to the wrong criminal case number in its response, and therefore suggests that the record is not proper for the Court to consider the case.

Williams is correct in stating that the State erroneously referenced Orleans Parish Criminal Case No. 372-657 in its response.  That case is the prosecution of a man named Leonard D. Williams and his co-defendant, Marlon Jackson.[22]  The case bears no connection to Tyrone Williams, the petitioner before this Court.  The Court has, however, confirmed that the record actually presented by the State in connection with this federal habeas corpus petition is related to Orleans Parish Criminal Case No. 399-049, in which Tyrone Williams was prosecuted for possession with intent to distribute cocaine and attempted possession of a weapon by a felon.  The record, therefore, is related to the proper criminal proceeding and is adequate for the Court to review Williams's claims.

## IV.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to Williams's petition, which is deemed filed in this court under the

---

[20]Rec. Doc. No. 23.

[21]Rec. Doc. No. 24.

[22]*See e.g.*, *State v. Leonard D. Williams*, 769 So.2d 629 (La. App. 4th Cir. 2000); *State v. Jackson*, 795 So.2d 1202 (La. 2001).

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become

federal "mailbox rule" on February 21, 2005.[24]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In a rather cursory manner, the State suggests that Williams has not exhausted available state court remedies with respect to several of his claims.  As outlined in the procedural history, the record demonstrates that Williams has presented each of his claims through the state courts to the Louisiana Supreme Court either on direct appeal or post conviction review.  Williams has fully exhausted his state court remedies.  Therefore, the State's exhaustion defense is rejected.

The State also argues, and the record reflects, that with respect to six of Williams's claims, the state courts relied upon a state law procedural bar when denying the claims.  The Court will address these procedural defenses before proceeding to the merits of Williams's other claims.

## V.     Procedural Default (Claim Nos. 2, 4, 7, 9, 12, and 13)

Among the claims raised on direct appeal, Williams alleged that the Trial Court erred when it denied the motion to recuse two judges and the district attorney's office and when it allowed the

---

effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Williams's federal habeas petition on May 25, 2005, when the filing fee was paid.  Williams's dated his signature on the petition on February 21, 2005.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

introduction of other crimes evidence to the jury, specifically the letter with Williams's prison address.  The Court denied relief on the other crimes evidence claim because it was not preserved for appeal by contemporaneous objection at trial pursuant to La. Code Crim. P. art. 841.  The Court also declined to review the motion to recuse because the motion was properly denied as untimely under Louisiana law.  The Louisiana Supreme Court also denied Williams's subsequent writ application without reasons.  The Court must presume that the higher court denied relief based on the same reasons as those presented by the Fourth Circuit.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

In his application for post conviction relief, Williams alleged that he was denied effective assistance of trial counsel, that he was subjected to judicial bias, and that the officers failed to knock and announce before entering his home.  Williams also claimed that the Trial Court erred in relying on unauthenticated evidence to enhance his sentence as a multiple offender.  He further complained, again, that the State was erroneously allowed to show the prejudicial letter to the jury before the deliberations.

The Trial Court denied relief on judicial bias and "knock and announce" claims pursuant to La. Code Crim. P. 930.4, because the claims had been addressed on appeal.  The Court also denied relief on the ineffective assistance of trial counsel claim pursuant to La. Code Crim. P. art. 930.4 for failure to raise the claim on direct appeal.  The Court further refused to consider Williams's unauthenticated multiple offender evidence claim, because the claim was inappropriate on post conviction review, citing *State ex rel. Melinie*.

10

Without reasons, the Court also denied the prejudicial letter claim, i.e. other crimes evidence claim, for failure to establish that relief should be granted.[25]  The higher state courts denied relief on these claims without additional reasons.  Nevertheless, when this claim was previously raised, it was denied on procedural grounds for lack of contemporaneous objection by the Louisiana Fourth Circuit.  This was the last reasoned decision on the issue.  *See Ylst*, 501 U.S. at 802.

The claims listed above were therefore denied based on state procedural grounds and Williams's procedural default.[26]  Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

---

[25]Thus, the last reasoned decision on this issue was that of the Louisiana Fourth Circuit on direct appeal where the claim was barred from review for lack of a contemporaneous objection at trial.

[26]"'The rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default.'"  *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (*quoting Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir.1987)).  Therefore, to the extent the Louisiana Fourth Circuit also commented on the merits of any of these claims is of no moment and this Court may examine the procedural bar.

### A.   Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. The bases for the dismissal of these four listed claims was the state procedural requirements that the claims be made in a proper and timely manner, preserved by contemporaneous objection, and/or the failure to raise the claim on direct appeal. The bases for the Trial Court's dismissal were therefore independent of federal law and relied strictly on state procedural requirements. *See Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.   Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*. This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's claims.

In doing so, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the

underlying proceeding fundamentally unfair.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.

1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d

1296 (5th Cir. 1980)).

   In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected

manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847

(5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must
> evaluate whether the rule was actually applicable on the particular facts of the case.
> Otherwise, state courts could disregard federal rights with impunity simply by using
> the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).  For

this reason, when state courts apply a procedural bar that has no foundation in the record or basis

in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, 2001 WL 611164 at *4

n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July

28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under

the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz,

J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such

a basis exists in state law, the bar must stand.

### 1.      La Code Crim. P. art. 930.4

   The state courts relied on La. Code Crim. P. art. 930.4 to bar post conviction review of

Williams's claims of ineffective assistance of trial counsel (Claim No. 9), judicial bias (Claim No.

7), and the failure to "knock and announce" (Claim No. 10).  As noted previously, Art. 930.4

provides for the dismissal of a post conviction application if it "(A) raises claims fully litigated on

appeal, . . . or (C) raises a claim which should have been raised on appeal . . ."

Based on the reasons given by the Trial Court, as adopted by the Louisiana Fourth Circuit, the focus of the bar imposed under Art. 930.4 was to prevent successive efforts to seek review of the judicial bias and "knock and announce" claims already heard on direct appeal and to preclude review of the ineffective assistance of trial counsel claim, which could have been raised on appeal and was not. Thus, it appears that the courts relied upon parts (A) and (C) of Art. 930.4. For the following reasons, the Court finds that Art. 930.4(C) is adequate support for the state courts' bar to post-conviction review of Williams's ineffective assistance of trial counsel claim.

Art. 930.4(C) prevents post conviction review of a claim that could have been raised on direct appeal and was not. The same is true of the ineffective assistance of counsel trial claim. Williams raised several *pro se* assignments of error on direct appeal in addition to those raised by his appointed counsel. His counsel on appeal was not the same as trial counsel. The state court determined that the basis for Williams's ineffective assistance claim was known to him at the time and could have been presented on direct appeal. The record supports the imposition of the bar. Because the claims could have been raised on direct appeal and were not, Art. 930.4(C) stands as an adequate bar to federal review of the ineffective assistance of trial counsel claim (Claim No. 9).

With respect to the imposition of Art. 930.4(A), the same is not true. The Trial Court's denial of post conviction relief on the judicial bias and "knock and announce" claims does not in and of itself prevent federal review of those claims. The bar under Art. 930.4(A) only prevents "further" review or repetitive review of a claim already considered on direct appeal. Thus, this Court is not procedurally barred from reviewing the claims unless some other bar was imposed on direct appeal.

As will be discussed, the judicial bias claim (Claim No. 7) is incorporated with another procedurally defaulted claim related to the denial of the motion to recuse (Claim No. 2). The "knock

14

and announce" claim (Claim No. 10) also will be addressed at the appropriate point later in this opinion.

### 2.    State ex rel. Melinie

Williams alleged that the Trial Court erred in relying on insufficient evidence to enhance his sentence where the documents were not authenticated (Claim No. 13).  The Trial Court relied on *State ex rel. Melinie*, 665 So.2d at 1172, to bar review of the claim in the last reasoned decision on the issue.

The federal courts have repeatedly held that *State ex rel. Melinie* and La. Code Crim. P. art. 930.3,[27] its statutory basis, are adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  *See, e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016 (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same).  The Court therefore finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* is adequate to bar review of the merits of Williams's claim that the evidence used at the multiple offender proceeding was insufficient because it was not authenticated.

---

[27]La. Code Crim. P. art. 930.3 establishes that post-conviction relief will not be granted unless the petitioner can establish that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

### 3.   **Contemporaneous Objection Rule**

The state courts also denied relief to Williams on the issue of the introduction of other crimes evidence (Claim Nos. 4 and 12), because of his failure to make a contemporaneous objection at trial to preserve the claim for appeal.[28]  Louisiana law, specifically La. Code Crim. P. art. 841, provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  It is well settled that the "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).  This Court will not consider Williams's other crimes evidence claim.

### 4.   **Untimely Filed Motion to Recuse**

The state appellate court on direct appeal did not consider the validity of Williams's motion to recuse and the alleged bias of the trial judge (Claim Nos. 2 and 7) as they related to the drug conviction because the motion was untimely filed under La. Code Crim. P. arts. 521,[29] 681, and 674.[30]  The only conviction being challenged by Williams in this federal habeas petition is the conviction for possession with intent to distribute cocaine.  Thus, the denial of relief was based on state law requiring that such a motion be timely made. *State v. Rollins*, 749 So.2d 890, (La. App.

---

[28]Because the Trial Court did not give reasons for denial of this claim except failure to show entitlement to relief, the last reasoned decision on the admissibility of the allegedly prejudicial letter was provided by the Louisiana Fourth Circuit on direct appeal.  The claim was at that time denied for lack of a contemporaneous objection to preserve the issue for appellate review.

[29]La. Code Crim. P. art. 681 provides that a motion to recuse a district attorney shall be in writing and filed in accordance with Article 521, which provides that pretrial motions shall be made or filed within fifteen days after arraignment.

[30]La. Code Crim. P. art. 674 provides that "[a] party desiring to recuse a trial judge shall file a written motion . . . prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment."

2d Cir. 1999) (addressing Art. 674); *State v. Anderson*, 714 So.2d 766 (La. App. 3rd Cir.  1998) (same); *State v. Brown*, 438 So.2d 1202 (La. App. 3rd Cir. 1983) (same); *State v. Manning*, 380 So.2d 54 (La. 1980) (same).

The federal courts have recognized that Louisiana courts consistently apply the rules of timeliness when considering pretrial motions such as this.  *See Williams v. Cain*, 125 F.3d 269 (5th Cir. 1997) (addressing timeliness under Article 521).  A review of the cases cited above reflects that the denial of relief based on the untimeliness of the motion under Louisiana law is adequate to bar federal review of Williams's claims.

For the foregoing reasons, the procedural bars imposed by the state courts were independent of federal law and adequate to bar federal review of Williams's Claim Nos. 2, 4, 7, 9, 12 and 13. Williams will be excepted from the procedural bars in spite of his default only if he can show cause for his default <u>and</u> prejudice attributed thereto.  Alternatively, he could demonstrate that the federal court's failure to review the claim will result in a fundamental miscarriage of justice.  *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d  at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

### C.    <u>Cause and Prejudice</u>

To establish a cause for his procedural default, Williams must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  He has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his, or his counsel's, ability to raise the claims in a proper manner.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.   Fundamental Miscarriage of Justice

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.  To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.   "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Williams has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence.  *Murray*, 477 U.S. at 496.  Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review.   When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Because Williams has not met this alternative exception to the procedural bar, his procedurally defaulted claims challenging the admission of other crimes evidence, ineffective assistance of trial counsel, and the multiple offender proceedings must be dismissed with prejudice without review of the merits.  The Court, however, will proceed to review the remaining claims.

## VI.    Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.  A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VII.  Failure to Suppress Evidence Seized during Arrest (Claim Nos. 1, 5, and 8)

Williams alleges that his Fourth Amendment rights were violated when the Trial Court failed to grant his motion to suppress and motion to quash the evidence seized at his arrest because the search warrant was stale and based on incomplete information, the reports of the evidence seized

were conflicting, and the search was invalidated by the officers' failure to knock and announce before entering the apartment.  The State alleges that these claims were addressed by the state courts on direct appeal and found to be without merit.

The Trial Court held a hearing on Williams's motion to suppress the evidence and denied the motion after finding no basis to suppress the evidence.  The claims were also addressed and resolved against Williams by the Louisiana Fourth Circuit on direct appeal.  The Louisiana Supreme Court denied the subsequent writ application without reasons thereby acquiescing to the appellate court's reasoned decision.  *Ylst*, 501 U.S. at 802.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id*. at 494.  A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  (emphasis in original); *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curiam) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  Absent any plea or proof by the petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," the petitioner's claim cannot

succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984). The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim. *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Williams does not argue or contend that he was denied a full and fair hearing on the Motion to Suppress or the Fourth Amendment claims raised before this Court. The record shows that Williams presented the arguments in support of his claims that the warrant was invalid and that the evidence should be suppressed to the Trial Court, which conducted a full hearing. He then presented the claims to the Louisiana Fourth Circuit on direct appeal, which considered the claims in a full published opinion. The claims were then brought to the Louisiana Supreme Court, which granted no relief. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews*, 21 F.3d at 631.

The State provided Williams, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone v. Powell* bar to federal review. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002).

Accordingly, *Stone v. Powell* bars review of this claim. *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). Williams's claims must be dismissed.

**VIII.   Denial of the Motion to Quash the Multiple Bill,  Insufficient Evidence, and Excessive Sentence (Claim Nos. 3 and 6)**

Williams alleges that the Trial Court erred in finding him to be a third offender because the court erred in denying the motion to quash based on ex post facto violations, the identification evidence was insufficient to prove Williams to be the same person, and the life sentence was excessive and unconstitutional where it was imposed without a jury.  The State argues that these claims are without merit for the reasons addressed by the state appellate court.

Williams raised these arguments on direct appeal to the Louisiana Fourth Circuit.  The Court held that the imposition of the life sentence as a third offender did not violate ex post facto prohibitions.  The Court also resolved that the evidence presented at the multiple bill hearing was adequate to prove Williams's identity with respect to the current and prior convictions.  The Court further held that Williams had no right to a jury trial on the issue of his habitual offender status and that his sentence was not excessive or cruel and unusual punishment.

**A.   Denial of Motion to Quash Based on Ex Post Facto Violation**

Williams alleges that the multiple bill should have been quashed because it violated the ex post facto laws by applying a ten year cleansing period to his enhancement proceedings.  The State alleges that Williams's claim is without merit since both of the prior convictions were within ten years of the commission of the instant offense.

A federal habeas court is concerned only with matters of the constitutional importance. Therefore, the issue to be resolved is whether the 1995 amendment to  the cleansing period within the Louisiana multiple offender laws, as discussed in detail below, violates the Ex Post Facto Clause set forth in Art. I, §10, cl.1 of the United States Constitution and the relevant jurisprudence interpreting that clause.

Art I, §10, cl. 1 provides, in pertinent part: "No state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."  The United States Supreme Court has long recognized that the constitutional prohibition of ex post facto laws applies only to criminal or penal statutes.  *Calder v. Bull*, 3 Dall. 386 (1798).  In *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001), the Supreme Court quoted Justice Chase who, in *Calder*, delineated the types of laws which would run afoul of the ex post facto prohibition:

> '1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.'

*Rogers*, 532 U.S. at 456 (quoting *Calder*, 3 Dall. at 390).

Moreover, for a criminal or penal law to be considered as applied ex post facto, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981).  Therefore, the Ex Post Facto Clause's prohibition extends only to a statute which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed."  *Collins v. Youngblood*, 497 U.S. 37 (1990).

Under La. Rev. Stat. Ann. §15:529.1(C), as it existed at the time Williams committed the felony acts giving rise to his 1988 and 1993 convictions, any conviction pursuant to which a defendant was "discharged from state custody and supervision" over <u>five</u> years before the date of his next felony offense, was not "counted" against him for purposes of determining his multiple

offender status.  *See generally*, *State v. Lewis*, 2001 WL 286139 at *13 (La. App. 4th Cir. 2001).

This is referred to as the "cleansing period."

Effective August 27, 1994, §15:529.1(C) was amended to provide for a cleansing period of

prior offenses occurring over <u>seven</u> years before a defendant's next felony offense.  A later

amendment, effective August 15, 1995, lengthened the requisite cleansing period to <u>ten</u> years.  Thus,

at the time of Williams's conviction in 1998, any conviction pursuant to which a defendant was

"discharge[d] from being subject to penitentiary confinement for the previous conviction" over <u>ten</u>

years before "the commission of the underlying felony" was not counted against him for purposes

of determining his multiple offender status.  *State v. Everett*, 816 So.2d 1272, 1276-77 (La. 2002).

Williams claims that his 1988 and 1993 convictions were subject to the five year cleansing

period and application of the ten year cleansing period in his multiple offender proceeding

constituted an ex post facto application of the 1995 amendment of §15: 529.1(C).  For the following

reasons, Williams's claim is without merit since the 1995 amendment was not an ex post facto law

nor was it improperly applied in his 1999 multiple offender proceeding.

The United States Supreme Court has held that "[e]nhancement statutes, whether in the

nature of criminal history provisions such as those contained in the Sentencing Guidelines, or

recidivist statutes which are commonplace in state criminal laws, do not change the penalty imposed

for the <u>earlier</u> conviction." (emphasis added)  *Nichols v. United States*, 511 U.S. 738, 746 (1994);

*Gryger v. Burke*, 334 U.S. 728, 731 (1948) (an enhanced sentence is not a new jeopardy or additional

penalty for an earlier crime but rather a stiffened penalty for the latest offense which is considered

an aggravated offense because of a repetitive one.).  Thus, the relevant offense for purposes of

analyzing the ex post facto implications of repeat offender statutes is the <u>current</u> crime, not the

predicate crimes.  *Accord United States v. Rasco*, 123 F.3d 222, 227 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083 (1998); *United States v. Arzate-Nunez*, 18 F. 3d 730, 734 (9th Cir. 1994).

Under these considerations, to the extent Williams asks this court to consider the ex post facto implications as affecting the 1988 and 1993 convictions, his argument must be rejected.  The only conviction relevant under the ex post facto analysis is the current, 1998 conviction for possession with intent to distribute cocaine.  That conviction clearly came after the 1995 amendment to § 15:529.1(C) and there is no ex post facto implication.

The paramount concern of the constitution's ex post facto prohibition is that a defendant be given fair notice of a crime or of punishment for a crime prior to the crime being committed.  *See Weaver*, 450 U.S. at 29.  Because §15:529.1(C) was amended prior to Williams's commission of his third felony offense, this notice requirement was met.  Williams fails to show that the increased cleansing period in effect at the time he committed the present conviction (for which he received the enhanced sentence) violated the prohibition against ex post facto application of law.

Furthermore, the ten year cleansing period was properly applied during Williams's 1999 multiple bill proceeding.  The instant offense was committed on November 18, 1997, which was less than ten years after Williams's release from sentences imposed in connection with the 1988 and 1993 convictions.

Williams's fails to show that the state courts' finding of no ex post facto violation was a determination contrary to, or an unreasonable application of, Supreme Court law.  His claim must be denied.

**B.**   **Insufficient Identification Evidence**

Williams alleges that the State failed to present sufficient identification evidence to establish that he was the same person previously convicted.  The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the court to determine whether, after identifying the elements of the charge as defined by state law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charge to have been proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319, *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000); *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.  *State v. Shelton*, 621 So.2d 769 (La.1993); *State v. Staggers*, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (*citing State v. Davis*, 829 So.2d 554 (La. App. 5th Cir. 2002)); *State v. Warfield*, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction.  *State v. Staggers*, 2003 WL 22438958 at *6.  However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records.  *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), *writ denied*, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

*State v. Shelton*, 621 So.2d at 779 (footnotes omitted).

Williams seeks review of the state courts' determination that he is a third multiple offender based on his allegation that the State's identification evidence was insufficient to establish him as the person previously convicted. Specifically, he argues that his fingerprints on the 1988 and 1993 arrest registers only showed that he was arrested and did not prove that he was convicted of those crimes.

The State introduced the testimony of Glen Burmaster, a latent fingerprint expert with the New Orleans Police Department.[31]  In connection with his testimony, the State submitted five exhibits:[32] (1)  the fingerprint card of prints taken on the day of the hearing; (2) a certified copy of the arrest register related to Case Number 328-931 dated August 28, 1988, bearing Williams's fingerprints; (3) a copy of a bill of information packet from Case Number 328-931, which also contained a copy of the arrest register and Williams's fingerprints; (4) a certified copy of the arrest register related to Case Number 362-846 dated March 23, 1993 bearing Williams's fingerprints; and

---

[31]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Transcript, Volume 1, pp. 3-4, 4/26/99.

[32]*Id.*, pp. 4-8.

(5) a copy of a bill of information packet from Case Number 362-846, which also contained a copy of the arrest register and Williams's fingerprints.

Burmaster testified that the fingerprints on the 1988 arrest register were a positive match to the fingerprints taken from Williams on the day of the hearing.[33]  In addition, the arrest register and other descriptive information about Williams contained in the bill of information packet for Case Number 328-931 was identical to the 1988 arrest register which bore Williams's fingerprints.[34]

Burmaster also testified that the fingerprints on the 1993 arrest register were a positive match to the fingerprints taken from Williams on the day of the hearing.[35]  Burmaster also compared the fingerprints on the back of the bill of information in the packet for Case Number 328-931 with the fingerprints taken from Williams that day.[36]  He stated that, because of the poor quality of the copy of the fingerprints  on the bill of information, he was not able to make a match to Williams's fingerprints.  He testified that he was able to match four points but needed ten points to make a positive identification.  However, the bill of information packet contained an identical copy of the arrest register associated with Williams's March 23, 1993 arrest.  The fingerprints on that copy matched the 1993 arrest register and Williams's current prints.[37]  Burmaster also compared the other identifying information, e.g. name, birth date, arrest date, item numbers, and charges, in the records which disclosed that Tyrone Williams was the same person arrested, convicted, and present in the

---

[33]*Id.*, pp. 5-6.

[34]*Id.*

[35]*Id.*, p. 7.

[36]*Id.*

[37]*Id.*, p. 8.

courtroom that day.[38]  Thus, the fingerprint evidence established that Williams was the same person who was not only arrested but in fact convicted in 1988 and 1993.

The state trial court also determined that the documentary evidence presented to the state trial court, specifically the certified conviction records in Case Number 328-931, and the waiver of constitutional rights and plea of guilty forms signed by Williams on September 30, 1993 in Case Number 362-846, also established that Williams was convicted in those with counsel and, as to the plea in the later case, he did so with full knowledge and waiver of his constitutional rights.[39] Williams does not refute this finding.

Williams did not establish at the hearing, and has not demonstrated in the instant case, that the identification evidence was insufficient to establish him as the same person convicted in the prior cases.  The evidence, considered in the light most favorable to the prosecution, was sufficient for the state trial court to find that the prior felony conviction was appropriate as a basis to enhance his sentence under the habitual offender laws.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application, of Supreme Court precedent.  Williams is not entitled to federal habeas corpus relief on this claim.

C.      **Due Process and Denial of Right to a Jury**

Williams alleges that Louisiana's habitual offender law is unconstitutional because it allows the prosecutor to selectively apply the rule, it encompasses a presumption of regularity in the prior proceedings, and allows the enhancement of a sentence without benefit of a jury.

---

[38]*Id.*, pp. 5-8.

[39]*Id.,* p. 10; St. Rec. Vol. 1 of 4, Multiple Bill Hearing Transcript, Volume 2, pp. 2-3, 4/26/99.

Williams's first argument alleges that the habitual offender statutory scheme in Louisiana is unconstitutional because it leaves the option of pursuing the multiple bill to the prosecutor. A multiple offender or enhancement proceeding is not determinative of guilt or innocence and does not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. *Buckley v. Butler*, 825 F.2d 895, 902-03 (5th Cir. 1987). Thus, "[t]he Due Process Clause does not, . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke v. Raley*, 506 U.S. 20, 32 (1992) (quoting *Medina v. California*, 505 U.S. 437, 451 (1992)).

The Supreme Court has also held that "some selectivity in enforcement [of habitual offender laws] is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). The Court held that unless it is shown that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," there is no denial of equal protection. *Id*. at 456. Thus, there is no constitutional requirement, or Supreme Court precedent, which would require Louisiana to alter its habitual offender laws simply because the prosecutor, and not a judicial officer, has the authority to pursue the multiple bill.

Williams also alleges that Louisiana's habitual offender laws unconstitutionally create a presumption that the accused is the same person previously convicted and that there is no irregularity in those prior proceedings. As noted above, Williams has not established that Louisiana's laws are in any way unconstitutional in their scheme. In addition, Williams's claim also is not an accurate reflection of the law.

As discussed above, under Louisiana law, the State bears the burden of proving by competent evidence the existence of a prior felony conviction and that the defendant is the same person who

was convicted of the prior felony.  *State v. Shelton*, 621 So.2d at 769; *State v. Staggers*, 2003 WL 22438958 at \*5-6; *State v. Warfield*, 2003 WL 22439586 at \*2-3.  If the State meets this burden, the defendant can then challenge the competence of the proof submitted and the validity of the underlying convictions.  *State v. Shelton*, 621 So.2d at 779 (footnotes omitted).

Contrary to Williams's suggestions, the State bears a burden of proof that is not based on a presumption of correctness or the accused's guilt.  Furthermore, the accused is given the opportunity to refute any evidence submitted.  Williams has not established a constitutional issue arising from Louisiana's habitual offender laws.

Williams also alleges that Louisiana's habitual offender laws violated his right to a jury trial.  The United States Supreme Court, however, has held that the Constitution does not require that proof of the fact of a prior conviction be brought to a jury.  *Apprendi v. New Jersey*, 530 U.S. 466, 590 (2000).  In *Apprendi*, the Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added).  The Supreme Court reiterated this rule in its subsequent rulings in *Blakely v. Washington*, 542 U.S. 296 (2004) and *U.S. v. Booker*, 543 U.S. 220 (2005), recognizing the exceptions to the *Apprendi* rule for prior convictions and habitual offender adjudications.  *Accord Williams v. Terrell*, 2006 WL 1751059 (W.D. La. May 2, 2006) (discussing holdings and non-retroactivity of the cases).

Even prior to *Apprendi*, the United States Court of Appeals for the Fifth Circuit held that the Sixth Amendment does not require a trial by jury for multiple offender proceedings.  *Buckley*, 825 F.2d at 904 n.3.  Instead, bestowing such a right to a defendant is left to state law, and in Louisiana there is no such provision.  *Id.* (citing La. Rev. Stat. Ann. § 15:529.1(D)); *see* La. Rev. Stat. Ann.

32

§ 15:529.1(D)(2) ("Following a contradictory hearing, the <u>court shall find</u>" that the defendant is a second, third, or fourth offender) (emphasis added); *Id*. at § 15:529.1(D)(3) ("When the <u>judge finds</u>" that defendant has been convicted of a prior felony) (emphasis added).

Williams has failed to establish a constitutional error or violation of federal law arising from the denial of his motion to quash, the habitual offender statutory scheme, or the lack of a jury at the proceeding. The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent. Williams's should be denied.

### D.   <u>Excessive Sentence and Cruel and Unusual Punishment</u>

Williams argues that his life sentence as a third offender is excessive, cruel and unusual, and grossly disproportionate to the crime he committed, all in violation of the due process clause. He also argues that the impropriety of the sentence is evidenced by the fact that the habitual offender sentence is imposed without the right to parole, probation, or suspension of sentence, and was imposed upon him without regard for his drug addiction. The record reflects that Williams's 1988 conviction was for possession of cocaine and his 1993 conviction was for possession with intent to distribute cocaine, both violations of Louisiana's Controlled Dangerous Substances Laws.[40]

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). If a sentence is within the statutory limits, a federal habeas court will not upset the terms

---

[40]*State v. Williams*, 788 So.2d at 520; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, 5/9/01.

of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316.

In denying relief to Williams, the Louisiana courts made this same comparison in considering his sentence on appeal. At the time of his crime and conviction, La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) mandated that a life term be imposed on a third felony offender like Williams:

> A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows: . . .
> (b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then: . . .
> (ii) <u>If the third felony or either of the two prior felonies is a felony defined</u> as a crime of violence under R.S. 14:2(13) or <u>as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.</u>

(emphasis added).

Williams acknowledges that all three of his convictions were for felonies in violation of Louisiana's Controlled Dangerous Substances Law. As such, under Louisiana law, Williams's third drug offense was more than a sufficient basis for imposition of the life sentence.

Furthermore, the United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.* at 30 (quoting *Harmelin*, 501 U.S. at 1005). As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood*, 73 F.3d at 1346-47.

Under the law as it was at the time of Williams's crime and conviction, Louisiana courts consistently imposed the mandatory life sentence, without benefit of parole, probation, or suspension of sentence, to third offenders similarly situated. *See*, *e.g.*, *State v. Wolfe*, 761 So.2d 596 (La. App. 4th Cir. 2000) (third offense was possession with intent to distribute cocaine with two prior cocaine possession convictions and sentenced to life as third offender); *State v. Thompson*, 752 So.2d 293 (La. App. 4th Cir. 2000) (third offense was possession with intent to distribute cocaine and sentenced to life as third offender); *State v. Davis*, 745 So.2d 136 (La. App. 4th Cir. 1999) (remanded for resentencing to mandatory life as third offender where defendant was convicted of simple burglary and had two prior drug convictions); *State v. Hollins*, 742 So.2d 671 (La. App. 5th Cir. 1999) (third offense was possession with intent to distribute cocaine and sentenced to life as third offender); *State v. Bell*, 709 So.2d 921 (La. App. 5th Cir. 1998) (third offense was possession

with intent to distribute cocaine and sentenced to life as third offender); *State v. Hollins*, 704 So.2d 307 (La. App. 5th Cir. 1997) (third offense was possession with intent to distribute cocaine and sentenced to life as third offender);  *State v. Issac*, 702 So.2d 320 (La. App. 5th Cir. 1997) (third offense was possession with intent to distribute cocaine and sentenced to life as third offender).

To warrant a downward departure as an exception to the life sentence mandate, Louisiana courts require that a defendant present clear and convincing evidence that the life sentence does not meet the goals of the intended punishment, *e.g.* to prevent recidivism, and amounts to a purposeless and needless imposition of pain and suffering.  *State v. Johnson*, 709 So.2d 672, 675 (La. 1998). Williams did not and has not here met this burden.

As discussed above, Williams had two prior drug convictions before he committed the crime forming the basis of this petition.  He admittedly was involved in drug trafficking throughout his life.  His alleged prior drug use, without more, is not sufficient to warrant a downward departure under Louisiana law.  *State v. Williams*, 788 So.2d 515 (La. App. 4th Cir. 2001) (third offender); *State v. Bazile*, 762 So.2d 106 (La. App. 4th Cir. 2000) (fourth offender).

In *Robinson v. California*, 370 U.S. 660 (1962), the United States Supreme Court held that the California statute which made addiction to narcotic drugs a criminal offense, punishable as such, was violative of the Eighth and Fourteenth Amendments to the United States Constitution.  The *Robinson* Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply because he is addicted to drugs, it is not unconstitutional to punish overt acts which may originate from drug addiction.  *Robinson*, 370 U.S. at 665.  Thus, Williams has no basis under federal law to avoid imposition of the habitual offender laws based on his unsupported claim that

he was a drug user.  *See Bailey v. U.S.*, 386 F.2d 1 (5th Cir. 1967) (finding that *Robinson* did not prohibit punishment for crime even if motivated by drug use).

Nothing Williams has argued distinguishes his situation as an exception to the cases cited above in which the same sentence was imposed.  His commission of felony after felony warranted the life sentence under Louisiana law at the time.  The imposition of that sentence upon Williams as a third offender was <u>not</u> so extreme that it violated the Eighth or Fourteenth Amendments.

For the reasons discussed above, the state courts' finding that Scott's sentence was not excessive, was not cruel and unusual, and did not violate due process, was not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent.  This claim is without merit.

## IX.  "Selective Law Enforcement" or Denial of Equal Protection for Failure to Arrest Charlene Williams (Claim No. 10)

Williams claims that his constitutional rights were violated when the police arrested him for possession with intent to distribute but did not arrest his sister, Charlene Williams, who was also present in the house during the alleged drug activity and the arrest.  Under a broad reading, he claims that he was denied equal protection of the laws because his sister was similarly situated yet not arrested.

The Equal Protection Clause requires similar treatment of all persons similarly situated.  *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A party who wishes to make out an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action.  *See Washington v. Davis*, 426 U.S. 229, 246-50 (1976); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000); *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996).  As discussed above, to establish a claim of selective law enforcement, a plaintiff must

show that selective enforcement was deliberately based upon an unjustifiable standard, such as race or religion.  *Oyler*, 368 U.S. at 456; *see also*, *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003).

As determined by the state trial court on post conviction review of this claim, the evidence at trial indicates that the officers, armed with a search warrant, observed drug transactions involving Tyrone Williams.  The record does not contain any indication that Charlene Williams had engaged in or was observed during suspected criminal activity.  Thus, there are no facts in the record to suggest that Tyrone Williams's arrest, or the decision not to arrest Charlene, was intentionally based on race or some other protected classification.  Williams has not alleged or shown any facts to support any inference of purposeful discrimination on the part of the arresting officers which violated his constitutional rights.

Williams has not established that the denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court precedent.  He is not entitled to relief on this claim.

## X.  <u>Ineffective Assistance of Counsel on Appeal (Claim No. 11)</u>

Williams alleges that his appellate counsel gave ineffective assistance because she failed to challenge the introduction of the letter, i.e. other crimes evidence, which bore his address in prison which was introduced without compliance with the notice requirements of *State v. Prieur*, 277 So.2d 126 (La. 1973).[41]  He alleges that appellate counsel informed him by letter that she chose not to raise

---

[41]In *State v. Prieur*, 277 So.2d at 126, the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding." The State is required to give notice before presenting such evidence at trial.  *See also* La. Code Evid. art. 404(B)(1); *State v. Jackson*, 625 So.2d 146, 148 (La. 1993).

it because she felt the court would have found it to be harmless error.  The State did not address this claim in its opposition memorandum.

Williams raised this claim in his Uniform Application for Post Conviction Relief.  The state trial court denied relief finding Williams was not entitled to relief without specifying the reasons therefore.  The higher state courts also denied relief without stated reasons.

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, the petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of

39

reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693).  Thus, conclusory allegations of ineffective

assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

After review of the record, including the letter from Williams's appellate counsel, the Court finds that this claim is without factual support.[42]  First, the letter written by Williams's counsel does not address the introduction of the letter or the lack of *Prieur* notice as a separate claim.  Instead, counsel indicated that she chose not to raise issue with the denial of Williams's motion for new trial. She stated that she felt it was error for prior counsel and the court to allow the prison envelopes to be entered into evidence along with the money seized.  Counsel indicated that she felt the issue would be considered harmless error.  For this reason, she raised other grounds which she felt were stronger and advised Williams that her decision did not prevent him raising the arguments on his own behalf.

A review of the appellate opinion indicates that Williams in fact raised the issue that the envelopes were other crimes evidence that should not have been admitted.  As outlined above, that issue was denied without review for lack of a contemporaneous objection by trial counsel.

Thus, the court found the claim to be procedurally barred from review under state law.  The fact that it was not raised by counsel therefore had no affect on the outcome of the proceeding.  In addition, counsel in her discretion felt the claim would not be successful and she was correct.

---

[42]*See*, Rec. Doc. No. 3, Exhibit 21, Counsel's Letter dated 10/22/00.

The Supreme Court only requires that appellate counsel "reasonably ensure that an indigent's appeal be resolved in a way that related to the merit of that appeal." *Smith v. Robbins*, 528 U.S. 259, 276-77 (2000).  Her letter to Williams makes clear that she sought to pursue the "stronger" grounds for relief before the Louisiana appellate court.  Her decision not to raise a claim which she decided would not be meritorious is not in and of itself deficient performance.  In addition, in light of the appellate court's ruling on the issue, Williams cannot establish that his counsel's decision was in anyway prejudicial to him or the outcome of the case.

Williams has failed to demonstrate that counsel was ineffective under the standards set forth in *Strickland*.  The state courts' denial of relief of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Williams is not entitled to relief on this claim.

## XI. Incomplete Transcript of July 20, 1999, Hearing on the Motion to Quash (Claim No. 14)

Williams alleges that he was denied judicial review with respect to the state trial court's denial of his motion to quash the search warrants as they related to the weapons charge.  He alleges that the July 20, 1999, transcript of the hearing, at which he also entered his guilty plea to the weapons charge,  was incomplete in that it did not contain the argument or ruling on the motion to quash which had been orally made by counsel.

The State argues that this claim is without merit because the underlying challenge to the denial of the motion to quash was procedurally barred from review by the state courts.  The State is wrong in this regard.  The challenge to the denial of the motion to quash was raised by Williams on direct appeal as a challenge to the Trial Court's failure to suppress conflicting evidence (*see* Claim No. 5, above).  The claim was fully addressed on the merits by the Louisiana Fourth Circuit

42

and denied as meritless.  Nevertheless, for the following reasons, Williams is not entitled to relief on the incomplete transcript claim.

Williams raised the incomplete transcript claim for the first time in his application for post conviction relief.  The Trial Court denied relief finding that his claim was not supported by the record.  The higher appellate courts denied relief without any additional reasons.

The United States Supreme Court has held that an indigent defendant is entitled to a free copy of the trial transcript to have a meaningful appeal.  *Hardy v. United States*, 375 U.S. 277 (1964).  However, the State is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal."  *Draper v. Washington*, 372 U.S. 487, 495 (1963).

Louisiana law complies with these constitutional standards.  Appellate review in Louisiana is restricted to questions of law based on defense objections and assignments of error.  *State v. Francis*, 345 So.2d 1120, 1125 (La.) (citing La. Const. Art. 5, § 5(C) (1974) and La. Code Crim. P. art. 841), *cert. denied*, 434 U.S. 891 (1977).  Thus, when the transcript and record contain the portions necessary to address the issues actually raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for meaningful appeal.  *Schwander v. Blackburn*, 750 F.2d 494 (5th Cir. 1985).

The record indicates that Williams's counsel made an oral motion to quash the search warrants in a hearing held July 20, 1999, at which Williams also entered his plea of guilty to the

weapons charge.[43]  The record provided to this Court by the State does not contain a full copy of that transcript nor are any relevant pages contained in the multitude of exhibits submitted by Williams, contrary to his representations that they are.  Nevertheless, the issue before this Court is not whether the transcript has been presented here, but whether Williams was denied a meaningful appeal, or review, of the denial of the motion to quash the search warrants on July 20, 1999.  The record does not reflect that he was denied review.

A reading of the opinion of the Louisiana Fourth Circuit on direct appeal indicates that, in reaching its decision, the Court reviewed and cited to the transcript, and the trial court's ruling therein, of the July 20, 1999, hearing.[44]  Thus, the record does not support Williams's assertion that the appellate court did not have a transcript of the argument or the Trial Court's ruling on the oral motion to quash.

Instead, the record and transcripts were sufficient for the Louisiana Fourth Circuit to respond to the error raised by Williams on appeal.  There is nothing in the record to indicate that the record and transcript of the July 20, 1999, hearing in anyway affected Williams's right to a thorough appeal.  To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.  *See Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir.1987); *United States ex. rel. Hunter v. Follette*, 307 F. Supp. 1023, 1025 (S.D.N.Y.) ("general assertion that omitted portions of the record 'contained most of the . . . trial errors which are

---

[43]St. Rec. Vol. 4 of 4, Minute Entry, 7/20/99.

[44]*State v. Williams*, 788 So.2d at 520; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0011 c/w 2000-KA-1058, p. 6, 5/9/01.

reversible,' presents no ground for federal habeas corpus."), *aff'd*, 420 F.2d 779 (2d Cir.1969), *cert. denied*, 397 U.S. 1067 (1970).  Williams has not met this burden.

For the foregoing reasons, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Williams is not entitled to relief on this claim.

**XII.   <u>Recommendation</u>**

For the foregoing reasons, it is **RECOMMENDED** that Tyrone Williams's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 16th day of July, 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**